J-S79012-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DONALD M. BROWN | |
| Appellant | No. 1071 EDA 2016 |

Appeal from the Judgment of Sentence June 15, 2015
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0000544-2015

BEFORE: GANTMAN, P.J., MOULTON, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.: **FILED NOVEMBER 02, 2016**

Appellant, Donald M. Brown, appeals from the judgment of sentence entered in the Delaware County Court of Common Pleas, following his jury trial conviction for retail theft.[1] We affirm.

The relevant facts and procedural history of this case are as follows. On December 29, 2014, Appellant and an accomplice, Mr. Williams, entered a Home Depot in Marple Township through a service door labeled "Contractors." Mr. Williams was pushing a flat cart with a cardboard window box on top. Appellant and Mr. Williams loaded a French door refrigerator on the cart and proceeded to the customer service desk. Mr. Williams showed the store clerk a receipt for the window and asked about the store's return

---

[1] 18 Pa.C.S.A. § 3929(a)(1).

policy. Mr. Williams claimed he purchased both the window and the refrigerator at a different Home Depot store. While Mr. Williams spoke with the clerk, Appellant stood nearby. After the clerk informed Mr. Williams that he would have to return the items where they were purchased, Appellant and Mr. Williams took the flat cart from the store without paying for the refrigerator. As Appellant and Mr. Williams loaded the refrigerator into a U-Haul truck outside of the store, Cesar Evangelista, a loss prevention officer for Home Depot, recognized Mr. Williams from a prior retail theft. Mr. Evangelista became suspicious when he saw the refrigerator was a special order item that the store would typically ship to a purchaser's home. Mr. Evangelista called the police, who stopped Appellant and Mr. Williams in the U-Haul near the store. Mr. Williams told officers that he and Appellant had attempted to return the refrigerator, while Appellant stated he had accompanied Mr. Williams to Home Depot to help him pick up a refrigerator. The police arrested both Appellant and Mr. Williams. The Commonwealth charged Appellant with retail theft, receiving stolen property, and two counts of conspiracy.

Appellant proceeded to a jury trial on April 23, 2015. Mr. Williams, who had previously pled guilty to charges stemming from the Home Depot incident, testified on Appellant's behalf at trial. Mr. Williams stated Appellant was a friend, with whom he attended religious prayers, and Appellant knew of Mr. Williams' criminal history. Mr. Williams claimed he told Appellant the

refrigerator had already been paid for, in order to dupe Appellant into renting the U-Haul and unknowingly assisting in the retail theft. Mr. Williams also testified Appellant was aware that Mr. Williams did not have a credit card. After prosecution had an opportunity for cross-examination, the court asked Mr. Williams several clarifying questions. In addition, the court asked Mr. Williams, "Did you ever tell [Appellant] that 'I'm going to steal this refrigerator, you're going to help me, but if we get caught I'll take the fall'?" (N.T. Trial, 4/23/15, at 120). Mr. Williams denied he and Appellant had any agreement that Mr. Williams would take responsibility if they were caught and insisted he alone had planned the theft from Home Depot. At the conclusion of all testimony, the court gave the jury the following cautionary instruction:

> During the trial of the case, I did ask questions of Mr. Williams. I don't think I did any other witness, but the fact that I asked these questions as opposed to [the Commonwealth] or [Appellant's attorney] doesn't matter. My questions have no greater weight, or relevance, or anything else because I asked them. They're simply questions that I thought were necessary to clarify the witness' testimony and you should accept that. Don't say "well, that must be more important than the other evidence because the judge asked the questions." That is not the case. They are no different from the questions that either counsel asked during the trial.

(*Id.* at 146).

On April 24, 2015, the jury convicted Appellant of retail theft. The court ordered a pre-sentence investigation ("PSI") report. On June 15, 2015, the court sentenced Appellant to twelve and one-half (12½) to

- 3 -

twenty-five (25) months' imprisonment, plus three (3) years' probation. Appellant timely filed a post-sentence motion on June 24, 2015. The court denied Appellant's motion on September 8, 2015. Appellant did not file a direct appeal.

On November 17, 2015, Appellant timely filed a *pro se* PCRA petition seeking reinstatement of his direct appeal rights *nunc pro tunc*. The court appointed counsel on November 20, 2015, and Appellant's counsel filed an amended PCRA petition on March 4, 2016. The court granted Appellant's petition and reinstated Appellant's direct appeal rights *nunc pro tunc* on March 18, 2016. On April 8, 2016, Appellant filed a notice of appeal. The court ordered Appellant on April 19, 2016, to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely complied on May 6, 2016.

Appellant raises a single issue for our review:

> WHETHER IT IS REASONABLY POSSIBLE THAT THE TRIAL COURT'S PROTRACTED INTERROGATION OF THE ONLY DEFENSE WITNESS DEPRIVED [APPELLANT] OF A FAIR AND IMPARTIAL TRIAL WHEN THE COURT (I) ADVOCATED ON BEHALF OF THE COMMONWEALTH, DRASTICALLY SHIFTING THE MOMENTUM OF THE TRIAL; (II) POSED TWENTY-FIVE QUESTIONS THAT DID NOT SERVE THE PURPOSE OF CLARIFYING AN IMPORTANT ISSUE; (III) REPEATEDLY AND STRONGLY IMPUGNED THE CREDIBILITY AND CHARACTER OF THE DEFENSE'S ONLY WITNESS; AND (IV) REACTED NEGATIVELY AND EXPRESSED INCREDULITY REGARDING THE PLAUSIBILITY OF THE DEFENSE.

(Appellant's Brief at 7).

After a thorough review of the record, the briefs of the parties, the

applicable law, and the well-reasoned opinion of the Honorable James P. Bradley, we conclude Appellant's issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (**See** Trial Court Opinion, filed June 7, 2016, at 8-10) (finding: Mr. Williams testified in manner that was confusing and contradictory at times; Mr. Williams claimed to enjoy "honest" six-year friendship and religious connection with Appellant, and at same time testified that he twice duped Appellant into unknowingly committing thefts; court expressed no opinion regarding Mr. Williams' credibility; court simply reviewed Mr. Williams' earlier testimony and ultimately asked Mr. Williams if he had agreement with Appellant that, in event theft led to arrest, Mr. Williams would take full responsibility; Mr. Williams denied any such agreement existed; court did not act as advocate for prosecution; court did not engage in pervasive pattern of questioning that by method or in content deprived Appellant of fair and impartial trial; Appellant was not deprived of fair trial as result of court's limited inquiry).[2] Accordingly, we affirm on the basis of the trial court opinion.

Judgment of sentence affirmed.

---

[2] Moreover, the court gave the jury a cautionary instruction. The court advised the jury not to give undue or additional weight to the questions the court asked of Mr. Williams. "[T]he law presumes that the jury will follow the instructions of the court." **Commonwealth v. Rega**, 593 Pa. 659, 692, 933 A.2d 997, 1016 (2007), *cert. denied*, 552 U.S. 1316, 128 S.Ct. 1879, 170 L.Ed.2d 755 (2008).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/2/2016

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA**
**CRIMINAL DIVISION**

| | | |
|---|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** | : | **CP-23-CR-544-2015** |
| | : | |
| **vs.** | : | |
| | : | |
| **DONALD BROWN** | : | |
| | : | |

**A. Sheldon Kovach, Esquire, on behalf of the Commonwealth**
**Michael J. Harper, Esquire, on behalf of the Defendant**

# O P I N I O N

**Bradley, J.**                              **FILED:**

Defendant Donald Brown was found guilty of retail theft[1] after a jury trial. The incident that gave rise to his conviction took place on December 29, 2014 when Defendant and a co-conspirator, Eugene Williams, entered a Home Depot in Marple Township, Delaware County and removed a large refrigerator that was on display. After creating a diversion the two men left the store and loaded the refrigerator into a U-Haul rental truck bearing Arizona license plates. The U-Haul was stopped within minutes of leaving the Hope Depot parking lot. The men's actions in the store were caught on video tape and a loss prevention officer immediately identified the two men and their vehicle at the location of the stop.

On June 15, 2015 a sentence of twelve and one-half to twenty-five months of incarceration to be followed by three years of probation was imposed. Post-sentence motions

---

[1] 18 Pa.C.S.A. 3929(a)(1)



were denied on September 8, 2015. Defendant did not appeal from judgment of sentence. On November 17, 2015 Defendant filed a Post Conviction Relief Act petition alleging *inter alia*, that trial counsel provided ineffective assistance by failing to file a timely notice of appeal on his behalf. After an amended counseled PCRA petition was filed, the Commonwealth agreed that relief in the form of a direct appeal *nunc pro tunc* was warranted. Relief was granted on March 18, 2016.

A Notice of Appeal was filed by newly appointed counsel. In a "Statement of Errors Complained of on Appeal," filed on May 6, 2016 Defendant has identified a single issue:

> The Trial Court abused its discretion when it examined, reacted and commented on the testimony of witness Eugene Williams in a prejudicial manner depriving Appellant of due process of law. See Commonwealth v. Hammer, 508 Pa. 88, 494 A.2d 1054 (Pa. 1985).

Statement of Errors Complained of on Appeal.

At trial the Commonwealth offered the testimony of Cesar Evangelista, Home Depot Loss Prevention Associate, in the Marple store where the theft occurred and Officer Nick Coffin and Detective Barry Williams of the Marple Township Police Department. Mr. Evangelista testified that on December 29, 2014 at about 11:45 a.m. he saw two men, the Defendant and Eugene Williams, in the parking lot rapidly loading a "French door" refrigerator into a U-Haul van. N.T. 4/23/15 p. 26, 42. He immediately recognized Williams from retail thefts that had taken place at Home Depots in Upper Darby and Plymouth Meeting earlier in the week and he recognized the Defendant from the theft reported at the Upper Darby store. Id. at 27-28, 41. Mr. Evangelista knew that refrigerators were "special order" items that were ordered in-store and then

2

delivered directly to the purchaser's home. He immediately called the Marple Police Department and reported the suspected theft. He was able to provide police with a description of Mr. Williams and reported the facts that the U-Haul was bearing an Arizona license plate and was heading south on Sproul Road. Id. at 29, 52. This information was broadcast throughout Delaware County via the 911 call center. Id at 67. After calling the police Mr. Evangelista went into the store and viewed video tape` that captured images of the Defendant and Williams in the store. This video was viewed by the jury.

The video showed Defendant and Williams entering the store through the "contractor" exit. Defendant pushed a cart with a large brown box on it. It was later determined that the box contained a broken window. The two men went to the back of the store and are next seen returning to the front with a French door refrigerator on the cart along with the window. Next, Defendant hands Williams a receipt and Williams is shown holding up a receipt and speaking to a customer service employee. Id. at 30-31, 35. Mr. Williams and Defendant then leave the store by the main exit with both the refrigerator and the window. Id. The men passed all points of sale without paying for the refrigerator. Id. at 34.

Officer Nick Coffin responded to Mr. Evangelista's call. Id. at 52. He received information almost immediately following the dispatch that a Springfield patrol officer had intercepted and stopped the U-Haul. Id. at 52. Officer Coffin went to the location of the stop and made contact with the driver, Eugene Williams. He explained the purpose of the stop and his investigation and asked Williams for a receipt for the refrigerator. Id.

3

at 54. Williams did not have a receipt and offered by way of explanation, a story that he was attempting to return a refrigerator that he purchased from another store. Id. at 36-38, 55, 68. Mr. Brown told officers that he and Williams had gone to the Home Depot to pick up the refrigerator. Id. at 56. Both men were arrested. Id. at 39.

Within minutes of the 911 call Detective Barry Williams of the Marple Township Police Department arrived at the store, picked up Mr. Evangelista and drove him to the location of the stop. Id. at 36. The stolen refrigerator and a broken window were in the truck's cargo area. Id. at 69. Mr. Evangelista immediately identified Defendant and Williams as the men he had seen loading the refrigerator into the van. Id. at 36-38, 68. Detective Williams described Williams as "uncooperative" and testified that Defendant looked nervous and "talk[ed] a lot. Id. at 84.

Defendant did not testify at trial. He did however offer the testimony of Eugene Williams. See id. at 87-122. Williams pled guilty to theft in connection with this incident before Defendant's trial. He testified that Defendant knew nothing about the theft and that he (Williams) "was taking the case." His statements at the location of the stop bore no resemblance to his testimony at trial where he stated that he "duped" the Defendant into both renting a U-Haul truck and removing the refrigerator from the Home Depot by telling him that he had to pick up a "special order" that was already paid for. See id. at 91, 103-06. Williams is a serial thief with convictions for three retail thefts in New Jersey, several different theft convictions in Pennsylvania and larceny, theft and robbery convictions in Virginia. Id. at 98. He and the Defendant knew each other for about six years and the Defendant knew that Williams was incarcerated "upstate" before this

4

incident. Id. at 115. Williams claimed that he was "honest" with Defendant about his criminal past because he "liked" him and they prayed together but nevertheless he purposefully duped Defendant into renting a truck and unknowingly assisting him in this theft. Also, Williams duped the Defendant not once but twice. A week earlier Brown helped Williams commit a retail theft at a Home Depot in Upper Darby, PA. Id. at 104. When the prosecutor inquired regarding the earlier theft, Williams explained that each time he compensated the Defendant for renting a truck and helping him. Defendant knew that Williams did not have a credit card. Id. at 105. At the same time Williams testified that he told Defendant that he placed special orders in advance for the merchandise and that he had receipts for the items he intended to steal. Williams described a scam in which he routinely went into a store displaying a "bogus" receipt, feigned an attempt to return certain merchandise and then left the store with additional items that were not paid for. See id. at 106.

At the conclusion of Williams's testimony the Court briefly reviewed several areas of his testimony. The facts that Williams knew Defendant for six years, that they were friends and attended masjid together, that Defendant drove Williams on occasion, that Defendant knew that Williams had a criminal history and had spent time "upstate, " and that Defendant was paid for his assistance were reiterated. Williams again testified both that he was "honest" with the Defendant and that he "duped" him. Williams recounted his entry, exit and activities in the store where Defendant was never more than six feet away. Each of these areas was explored in Williams's earlier testimony or was depicted in the video that the jury viewed more than once. Once again Williams described his

5

credibility but merely asked the witness to reiterate his testimony in areas that were previously explored. As could be expected from a person of his ilk, Williams testified in a manner was at times confusing and contradictory. He claimed to enjoy an "honest" six-year friendship and religious connection with Defendant and at the same time testified without reservation that twice he paid the Defendant for his services and duped him into unknowingly assisting in committing a theft. The trial court simply reviewed Williams's earlier testimony and asked a final clarifying question which was the crux of Williams's testimony: whether Williams had ever assured Defendant that if the theft led to an arrest and prosecution Williams would take full responsibility.

In Commonwealth v. Manuel, 844 A.2d 1, 9 (Pa. Super. 2004) the appellant claimed that he was unduly prejudiced after the trial court made inquiries during an expert witness's testimony and at its conclusion queried whether the expert's answers in cross-examination in any way changed, altered or modified the opinions that he had rendered. On appeal the Superior Court found that this single question was not "of such nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial." Id. at 9. Similarly, in Commonwealth v. Hodge, supra, where an alibi witness's testimony was "hazy and inconsistent," the trial judge questioned the witness in an attempt to clarify his responses. In an effort to rehabilitate his own testimony the witness made statements that revealed the appellant's efforts to avoid arrest and thus raised flight as consciousness of guilt. As in the current case, the record showed no evidence of bias, hostility, or unfairness in the court's questions and on appeal the Superior Court

9

concluded that there was no merit to the claim that the appellant was denied the right to a fair and impartial trial because the trial court acted as an advocate for the prosecution. Rather, the court appropriately exercised its inherent right to question witnesses "to clarify existing facts and to elicit new information." Id. at 179. So too, in this case the Defendant suffered no undue prejudice and was not deprived of a fair trial as a result of the trial court's limited clarifying inquiry.

In light of the foregoing it is respectfully submitted that judgment of sentence should be affirmed.

BY THE COURT:

James P. Bradley,                    J.

10